# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JACLYN DAWN BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-286-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jaclyn Dawn Brown requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was thirty-six years old at the time of the administrative hearing (Tr. 146). She has a college education and has worked as a program aide, customer service representative, nursery school attendant, and cashier/checker (Tr. 165, 55). The claimant alleges that she has been unable to work since May 1, 2013, due to neuropathy, diabetes, bone pain, three partial toe amputations on her left foot, recurrent wounds on her left foot, depression, high blood pressure, high cholesterol, and reshaped bones in her feet (Tr. 146, 164).

**Procedural History**

On January 13, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 146-47). Her application was denied. ALJ Deirdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 13, 2016 (Tr. 13-26). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made her decision at steps four and five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she could lift, carry, push or pull up to five pounds frequently and ten pounds occasionally; could stand and/or walk up to two

hours in an eight-hour work day; could occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl; could never use left foot controls or climb ladders, ropes, or scaffolds; and required the option to use a cane for ambulating (Tr. 18-19). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a customer service representative, and alternatively because there was work she could perform in the national economy, *i. e.,* food and beverage order clerk, new account investigator, and addresser (Tr. 24-26).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) determine whether her peripheral neuropathy met or equaled Listing 11.14, (ii) determine whether her skin infections met or equaled Listing 8.04, and (iii) account for her peripheral neuropathy in formulating the RFC. The Court agrees that the ALJ erred in formulating the RFC, and the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of obesity, diabetes mellitus, gastrointestinal disorder, degenerative disc disease, chronic infections of skin or mucous membranes, amputation, and a spine disorder; the nonsevere impairments of hypertension, hyperlipidemia, vitamin D deficiency, anxiety disorder, and affective disorder; and that her carpal tunnel syndrome was not medically determinable (Tr. 15-18). The relevant medical evidence reveals that on November 7, 2013, the claimant underwent a distal amputation of the first and second digits on her left foot due to an osteomyelitis infection in both digits (Tr. 422-23). On April 8, 2014, the claimant underwent a partial

third toe amputation on her left foot due to a diabetic foot infection with osteomyelitis (Tr. 1168-69). Beginning in October 2014 and continuing through May 2015, the claimant was treated for an ulcer on the stump of her left hallux (Tr. 736-48, 752-836, 850-60, 1257-60, 1270-86, 1295-1300, 1309-17). Throughout this period, the claimant's treating physicians repeatedly noted that the claimant was noncompliant with treatment, and Dr. Jon Humphers specifically attributed her failure to heal directly to her failure to follow prescribed treatment (Tr. 741). On May 26, 2015, Dr. Humphers referred the claimant back to her primary care provider for further care as needed due to her lack of compliance with care and failure to keep appointments (Tr. 860). The claimant next sought wound care for her left foot on December 7, 2015, and was admitted to inpatient treatment for cellulitis (Tr. 1336-56). She was again admitted to inpatient treatment for cellulitis on February 23, 2016 (Tr. 1542-1613). Thereafter, Dr. Huphers resumed treating the claimant and continued through at least April 8, 2016 (Tr. 1637-41, 1653-74). The claimant was treated on an emergent, outpatient basis for cellulitis on April 10, 2016 (Tr. 1682-95).

As to the claimant's peripheral neuropathy, physical examinations found decreased vibratory sensation and no pain on palpation to her left foot between April 2013 and June 2013, and decreased vibratory sensation to both feet between August 2013 and December 2013 (Tr. 336, 342, 350-52, 358, 367, 371, 378, 382, 387, 392, 409, 498, 503, 508). She was diagnosed with peripheral neuropathy on May 9, 2013, and was treated with medication thereafter (Tr. 350-52). The claimant generally indicated that her medication helped with her neuropathy pain, however, at a follow-up appointment on February 6,

2015, she reported that her medication was no longer effective and her dosage was increased (Tr. 1318-23).

Dr. Sung Choi completed a consultative physical examination of the claimant on March 28, 2015 (Tr. 720-27). He noted the claimant had full strength in her feet and normal deep tendon reflexes in all extremities, but had weak heel and toe walking, and a slow and slightly unsteady gait (Tr. 723, 727). Dr. Choi assessed the claimant with diabetes mellitus with peripheral neuropathy and complicated by osteomyelitis, and chronic low back pain with possible lumbar radiculopathy (Tr. 727). Dr. Choi concluded that the claimant had objective findings that would be consistent with a decreased ability to perform normal work-related tasks (Tr. 727).

On August 13, 2015, state agency physician Dr. Peyton Osborne completed a Physical RFC Assessment and found that the claimant could perform sedentary work with occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders, ropes, or scaffolds due to her chronic back pain and left toe amputations (Tr. 87-89). Dr. Osborne also indicated that the claimant should avoid constant foot controls due to her left toe amputations (Tr. 83).

At the administrative hearing, the claimant testified that she was first diagnosed with neuropathy in 2005 (Tr. 52). She stated that she is always in pain and has decreased sensation in her feet due to neuropathy (Tr. 51-52). She indicated that she was unable to prepare breakfast and or get her children ready for school because she needed to stay off her feet due to "holes" on the bottom of her feet (Tr. 39-40). She further stated that she walked only ten steps in a day and used a wheelchair the remainder of the time (Tr. 40, 50).

In her written opinion, the ALJ summarized the claimant's testimony and the medical record. The ALJ gave great weight to the state agency physicians' opinion that the claimant could perform sedentary work with postural limitations and avoiding constant foot controls, but further limited the claimant to using a cane for ambulation based on instructions from the claimant's treating physician immediately prior to the date last insured (Tr. 23). The ALJ gave Dr. Choi's opinion that the claimant had decreased ability to perform normal work-related tasks opinion partial weight because she found it was vague and did not specify what limitations the claimant required (Tr. 23-24).

The claimant contends, *inter alia*, that the ALJ failed to give proper consideration to her peripheral neuropathy. In this regard, the ALJ noted the claimant's medical history but never determined whether or not the condition amounted to a severe impairment. This was not reversible error in and of itself, as the ALJ's determination that the claimant had other severe impairments required the ALJ to account for the claimant's neuropathy at step four even if it did not amount to a severe impairment. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523). The ALJ did, however, commit reversible error by failing to account for the claimant's neuropathy at step four, either by

including limitations in the claimant's RFC or explaining why such limitations were unnecessary (Tr. 19). *See Hill v. Astrue*, 289 Fed. Appx. at 292 ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them."). Furthermore, the ALJ failed to consider Listing 11.14 regarding peripheral neuropathy despite evidence in the record that potentially implicated the listing, *e. g.*, the consistent treatment received by the claimant for peripheral neuropathy, and Dr. Choi's opinion that the claimant's toe amputations were attributable at least in part to such neuropathy (Tr. 726).

Because the ALJ failed to properly account for *all* the claimant's impairments at step four, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 8th day of March, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**